1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 PONANI SUKUMAR, | CASE NO. 00cv0304-LAB (AJB) |
| 12 Plaintiff, | **ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATIONS, WITH MODIFICATIONS, AND REALLOCATING COSTS** |
| 13 vs. | |
| 14 DIRECT FOCUS, INC., NAUTILUS INDUSTRIES, INC., NAUTILUS HPS, INC., NAUTILUS, INC., AND NAUTILUS FITNESS PRODUCTS, INC., | |
| 15 | [Dkt No. 255] |
| 16 | |
| 17 Defendants. | |

This court appointed Justice Howard B. Wiener (Ret.) as a Special Master to assist
in the final resolution of the parties' eight-year-old dispute in this lawsuit.  He provided a
Report and Recommendation ("R&R") after investigation of the issues, arguments, and
evidence.   The matter is before the court for resolution of plaintiff Ponani Sukumar's
("Sukumar") continuing post-trial attempts to secure specific performance and compensation
in this contract dispute against Defendant Direct Focus, Inc. ("Defendant" or "Nautilus") and
his Objections to the R&R.  The court held a hearing on April 21, 2008 for that purpose.
Jose L. Patino, Esq. appeared for Sukumar.   Robert W. Harrison, Esq. appeared for
Nautilus. This court has reviewed *de novo* the findings of the Special Master in consideration
of Sukumar's Objections and in consideration of the parties' arguments at the hearing.   With
the minor exceptions noted below, the court **ADOPTS** the Report and Recommendations
prepared by the Special Master.

00cv0304

A bench trial in this case was tried by the undersigned District Judge in July 2004, and resulted in entry of judgment in Sukumar's favor.  The court entered findings of fact and conclusions of law on July 29, 2004.  Dkt No. 153.  Sukumar moved for entry of judgment and costs as prevailing party.  The court entered Judgment on December 7, 2004. Dkt No. 175.  In particular, the court ordered:  specific performance by Defendant; delivery of all machines and related equipment identified in the Contracts Summary; consequential damages to Sukumar of $70,000; a date certain by which Defendant was to complete all repairs and deliveries; and agreed costs, among other things.

Six weeks later, on January 18, 2005,  Sukumar filed a 27-page Notice listing in minute detail alleged "conditions constituting material breach," and about 20 additional pages of exhibits.  Dkt No. 176.  This court rejected the Notice as untimely and dismissed the case for all purposes.  Dkt No. 177.  Sukumar unsuccessfully moved to vacate the Order and for a hearing of a motion to enforce the judgment.  Dkt No. 178.  On February 18, 2005, Sukumar filed a notice of Appeal.  Dkt No. 187.  On June 4, 2007, the Ninth Circuit vacated the Judgment and remanded the case for further proceedings.  Dkt No. 206.

At the appeal mandate hearing, the court informed the parties it intended to refer the parties to a Special Master to inspect the equipment and address the remaining alleged defects in a Report and Recommendation, as the  Ninth Circuit had suggested in its remand ruling.  Dkt No. 208.  The Ninth Circuit stated:  "In view of the demonstrated propensity of the purchaser microscopically to inspect the sold goods for defects, the district court may deem it an appropriate saving of judicial resources to let the parties pay for a special master to work out a recommended final order."  Sukumar v. Direct Focus, Inc., 224 Fed.Appx. 556, 560 (9th Cir. 2007).

Before resorting to a Special Master proceeding, the court instructed Sukumar to give Nautilus a list of specific defects he contended remained uncorrected and ordered Nautilus to inspect the allegedly defective machines and make what corrections it could, all within a scheduled time frame.  The court forewarned the parties it would conduct a hearing thereafter, if needed, with the understanding Sukumar's edited list would include only those

remaining remediation disputes over *material* alleged defects for referral to a Special Master. Dkt No. 208.  The court alerted the parties that if a Special Master appointment became necessary, it would order costs apportioned equally between plaintiff and defendant, unless an adjustment was warranted based on plaintiff's assertion of immaterial or frivolous defects causing the costs to be more than they otherwise would have been, or based on Defendant's failure to fix some or all of the items it should have remediated in conformance with the Judgment. Dkt No. 208. Sukumar objected to the appointment of a Special Master, insisting the court is better suited to the review task.  The court overruled his objection.

The parties thereafter submitted a Stipulation Regarding Special Master on August 27, 2008, when it became apparent they would be unable to resolve their remaining disputes.  Dkt No. 216.  Although Sukumar objected again to the appointment of a Special Master, both sides agreed Justice Howard B. Wiener (a retired Justice of the California Court of Appeal) was an acceptable choice.  Dkt No. 216 p. 2.  On September 10, 2007, the court overruled Sukumar's renewed objections to the appointment of a Special Master and instructed the parties to prepare a proposed Order appointing Justice Wiener, including a schedule for the Special Master proceedings.  Dkt No. 227.  The Order of appointment, among other things, set a schedule for completion of the assignment, and reiterated this court's reservation of the right to adjust responsibility for costs if either party failed to proceed reasonably and in good faith with positions advanced before the Special Master or made unwarranted or frivolous objections to the Special Master's R&R.  Dkt No. 229.

Justice Howard B. Wiener is a distinguished former Riverside County Superior Court Judge and Justice of the California Fourth District Court of Appeal.  Currently, he is a highly-sought-after mediator, greatly respected in the San Diego legal community.  He accepted the Special Master assignment in this case, and provided his fifteen-page R&R on March 8, 2008.  The R&R contains well-reasoned discussion in support of each of the ten discrete recommendations it makes.  It reflects a conscientious investigation of the parties' remaining disputes involving extensive briefing, expert opinions, multiple hearings, and evidentiary submissions from both sides, and thoughtful, practical proposed results.

00cv0304

1    Defendant filed a short Motion To Adopt Special Master's Report And

2    Recommendation in its entirety -- effectively a notice of non-opposition.  Dkt No. 241.

3    Sukumar filed an Opposition, criticizing Defendant's Motion as "skeletal and unavailing."

4    Contrary to Sukumar's criticism, however, a party having no objection to an R&R is not

5    expected, much less compelled, to reargue the contents of an R&R with which it agrees and

6    entirely accepts, including those portions, as here, imposing on itself additional obligations.

7    Sukumar floats the proposition, relying on inapposite legal authority, the District Court is

8    required to review *de novo* in its entirety any and all R&Rs, not merely those portions of an

9    R&R to which objection is made.  Such a proposition would render all Special Master

10   proceedings and all R&R processes wholly redundant and extravagant and ignores the

11   express standard of Rule 53, imposing on the District Court the obligation to decide *de novo*

12   only "all *objections* to findings of fact made or recommended by a master" and "all *objections*

13   to conclusions of law made or recommended by a master."[1]  Rule 53 (f)(3),(4).  Moreover,

14   contrary to the implication of Sukumar's argument, Rule 53 does not mandate that a *de novo*

15   review be conducted in the exact same manner as the Special Master conducted the factual

16   investigation underlying the R&R.

17   But economies and proportionality of responses have not been hallmarks of

18   Sukumar's style in the prosecution of this action.  In addition to filing Objections to

19   Defendants' motion, Sukumar filed Objections to the R&R approaching 300 pages in length.

20   He filed a 25-page document entitled Objections To, And Motion To Modify, Special Master's

21   Report And Recommendation (Dkt No. 243), accompanied by a Declaration of his counsel

22   authenticating ten (10) exhibits totaling in excess of 270 pages (Dkt No. 245) and a CD

23   exhibit, and Sukumar's own Declaration.  He essentially objects to *every* aspect of the

24   Special Master's process and conclusions, and seeks to have the court discard not only the

25   entire analysis and recommended results, but also the Special Master appointment itself.

26   He argues the court should void the appointment as improper and should reject the R&R "as

27

28   ───────────────

[1] "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion."  Rule 53(f)(5).

a nullity" on grounds the court is purportedly obligated to personally inspect the equipment and then revisit every asserted defect in consideration of Sukumar's plenary Objections and because there is no "transcript" of Special Master proceedings for the court's review.

The court **REJECTS** Sukumar's insistence this court should discard the Special Master process and results and begin anew. The court finds the appointment of Justice Wiener fully comports with the purposes of Rule 53, authorizing the appointment of a special master, among other things, to address post-trial matters that "cannot be addressed effectively and timely by an available district judge." Rule 53(a)(1)(c). Sukumar's additional representations that referral was improper because the nature of the task assigned is purportedly not properly delegable and "displaces" the court ignores the explicit recommendation of the Ninth Circuit as well as the review standard and posture of this case and are based on inapposite authority. *See* Pl. Obj. pp. 9-10. As recited on the record, this court considered not only the court's congested docket and the need to timely and effectively address these post-trial matters (a consideration amply supported by the parties' acknowledgment the Special Master spent at least a full week addressing all the materials presented by the parties, including hearings and a site visit), considerations expressly authorized under Rule 53, but also the complexity of Sukumar's ever-expanding complaints over the course of this litigation as reflected in the voluminous docket of this action. This court consciously included in that consideration the number and detail of Sukumar's objections to Nautilus' performance of its contract obligations, as acknowledged in the Ninth Circuit's ruling describing his obvious propensity to "microscopically inspect" the equipment, implicitly acknowledging he would then challenge any perceived imperfection as a breach of contract or, in the current posture of the case, as a failure to abide by the Judgment.

Sukumar objects to the report "in its entirety," arguing the Special Master's Report "is not supported by the record" and moves for complete *de novo* review of his expansive list of allegedly material defects. Dkt No. 243 p. 1. He insists the undersigned District Judge must personally inspect the physical equipment. He also insists the court should issue an Order stating Defendant has failed to satisfy the Judgment and award additional damages

in excess of six times the Judgment amount.[2]  Through his blanket objections to the R&R, Sukumar essentially asks the court to acquiesce at last to all of his demands, despite their previous rejection by at least three judges (including the undersigned District Judge) and now a Special Master, who have all concluded Sukumar harbors many unreasonable and unsatisfiable expectations.  For example, relatively early in this protracted litigation, after failed settlement efforts, in a 7-page R&R signed March 28, 2002 detailing the inspection results of each alleged machine defect, neutral inspector Magistrate Judge Harry R. McCue (Ret.) prophetically observed, after personally expending considerable time and effort to assist the parties in resolving their disputes:  "The list of other complaints clearly indicate[s] the expectations of Mr. Sukumar can never be met."  Dkt No. 110, Harrison Decl. In Support Of Defendant's Motion For Summary Judgment, Exh. A.  After presiding over this matter since its reassignment to the undersigned District Judge in October 2003, through dispositive motions and ultimately trial, this court reluctantly registered the same conclusion in its February 2005 Order denying Sukumar's *Ex Parte* Application rejecting his January 2005 Application to have the court vacate its Order dismissing the case after entry of Judgment.[3]

The court is now presented yet again with Sukumar's unrelenting resistence to accept the findings of another conscientious, neutral observer and evaluator recommending denial of multiple forms of detailed relief he continues to badger the court to order.[4]  The court finds

---

[2]   Sukumar unsuccessfully advanced these same arguments before the Special Master.

[3]   "This final attempt to satisfy Mr. Sukumar concludes a long history of prior attempts bogged down in minutia.  The Court is compelled to concur with retired Magistrate Judge Harry R. McCue's observation in his March 28, 2002 report while acting as a neutral inspector in this case to assist the parties in resolving their disputes:  'The list of . . . complaints clearly indicate[s] that the expectations of Mr. Sukumar can never be met."  Dkt No. 181, 2:23-27.

[4]   Sukumar's Declaration in support of his Objections to the Special Master's R&R provides his own summary of the mediation investment of the court and neutral outsiders under the auspices of the court to attempt to resolve this litigation.  He substantiates from "at least April through August of 2001, Magistrate Judge Anthony Battaglia actively oversaw settlement discussions and a mediated settlement agreement was reached" among the parties, with "Judge Harry McCue to serve as a neutral inspector for delivery" and inspection of the machines pursuant to the settlement agreement.. Dkt No. 244, 3/31/08 Sukumar Decl. ¶ 2.  Judge McCue conducted a mediation in March 2002 (four years after the initial order), where Judge Battaglia's settlement fell through purportedly because "the machines still did not comply with the contract," and purportedly Nautilus was "unreasonable"  Id. ¶¶ 3-4.  Retired Superior Court Judge Vincent DiFiglia conducted another unsuccessful mediation

particularly offensive Sukumar's representation: "The Special Master Misled Plaintiff Into Compromising His Rights."[5]  Pl. Obj. 10:24.  The objective of appointing a Special Master was to narrow the issues and provide objective findings with respect to each of the remaining disputes, with the goal of entering a final judgment and terminating this litigation.  The goal is obviously thwarted by Sukumar's persistent refusal to cull the material from the immaterial and to insist on standards beyond those reasonable under the parties' contracts.

Sukumar's Objections make clear he expects this court to revisit every issue presented to the Special Master and beyond.  He purports to have narrowed his assessment of his entitlements under the original Judgment, whereas the sheer volume of the materials presented convinces this court he continues to expand his demands at every opportunity. *See* Patino Decl. Exh. 10 descriptions.  Without abrogating its responsibility to make *de novo* determinations regarding matters in an R&R to which specific objection is made, the court nonetheless narrowly construes its review obligations and declines to proceed, after eight years of litigation, as if this case is before the court as a matter of first impression.

Defendant responds to Sukumar's Objections by correcting Sukumar's misstatement of the Rule 53 legal standards and demonstrating the Special Master performed his duties diligently and precisely within the scope of his appointing Order.[6]  An overriding and legitimate consideration in the decision to appoint a Special Master was to achieve finality in the effectuation of the trial results and Judgment in this action.  The R&R reflects Justice

---

in March 2004. Id. ¶ 5. Local attorney Craig Higgs, acting as a neutral inspector, conducted another unsuccessful mediation in July 2004 "on the eve of trial" in this case. Id.  ¶ 6. This court itself has attempted to address the long list of detailed dissatisfactions Sukumar has continued to generate, and has expressed on the record at various times its opinion as to the frivolousness of most of these complaints, with the exception of those items incorporated into the original Judgment in this case after the bench trial Nautilus was ordered to remediate.

[5]  Sukumar's complaint the Special Master should have ordered Nautilus to undertake the allegedly multiple minor defects or order Nautilus to pay takes insufficient heed of this court's referral Order that only *material* defects warrant further court involvement or of the Special Master's guidance to Sukumar he represents in his Objections that he concentrate on the "big ticket items." It appears he relies on that suggestion as demonstrating the Special Master purportedly "misled" him.

[6]  Justice Wiener identified in his R&R one practical recommendation related to the weight trees (his Recommendation No. 2) to resolve one of the issues raised by the parties and to which he represents the parties agreed at a hearing not technically within his fact-finding assignment.  R&R p. 5.

Wiener fully appreciated the need for finality and approached his role as Special Master accordingly. Defendant correctly positions the procedural posture of this case and the R&R assignment as encompassing "the narrow issue of whether NAUTILUS complied with the Judgment," distinguishing it from the authority Sukumar relies on in asserting a much more expansive view. Def's Resp. pp. 3-5; *see, e.g.*, Burlington Northern RR Co. v. Dept. of Revenue, 934 F.2d 1064, 1068 (9th Cir. 1991) (where the court "[b]y *sua sponte* order, without consulting either party. . . transferred the entire case to a special master").

This court rejects Sukumar's attempt to redirect the focus of the Special Master's assignment – and, consequently, of this court's review obligations – from the narrow issue whether Defendant complied with the Judgment to a full-blown, start-from-scratch retracing of the Special Master's steps and the equivalent of a new trial on each of the multiple discrete "defects" Sukumar identifies. The court can and does rely on the Special Master's findings, which the court finds *de novo* are supported by credible evidence.[7]

The court addresses each of Sukumar's serial objections. Sukumar objects to the Special Master's **Recommendation No. 2** (*i.e.*, that Nautilus be required to deliver 4 "new style weight trees" and allow Sukumar to retain the 4 old, more rugged type), a pragmatic proposed resolution of the parties' continuing dispute over the weight trees. Sukumar attempts to exploit the Special Master acknowledgment that recommendation departs somewhat from his "assigned role" to make findings with respect to alleged material defects, but he does not dispute the Special Master's explanatory representation that both Defendant and Sukumar *agreed to that solution* in the course of proceedings before him. Rather than rely on Nautilus' commitment in that regard and seek to have this court memorialize that agreement, Sukumar seeks an order for extravagant alternative relief as well. Sukumar

---

[7] The court observes Sukumar's characterization of the record is frequently disingenuous. *See, e.g.* Defendant's discussion of allegedly unrebutted evidentiary record at Def. Resp. pp. 9-10. The court is also disturbed by Sukumar's presentation of photographic exhibits purporting to show damage to certain machines without a clarifying explanation to the court regarding destructive testing by his own expert(s), and without ensuring the court notices his paint expert's conclusions are not unequivocal. The expert actually speculates certain conditions "may" have been caused by damage at the time of delivery and the like (as discussed below), whereas Sukumar suggests every image shows the results of allegedly inherent defects in the machines existing at the time of delivery. *See* Def. Resp. p. 10, n. 3 and Special Master's own observations of the machines reflected in his R&R.

insists "Nautilus must be ordered to manufacture and deliver two 'old style' weight trees according to the specifications of the [now ten-year-old] contacts if the 'non-binding' deal agreed to by the parties is not enforced." Pl's Obj. to Special Master R&R 20:23-26.

Nautilus reiterated at the hearing it remains willing to let Sukumar keep what he has and to provide four new style weight trees and will do so as soon as they can be delivered following entry of this Order to globally resolve all remaining disputes.  There will be no end in sight for Nautilus or the court if Sukumar is permitted to agree in one formal proceeding to accept a solution for a discrete dispute, then to seek to have the court order more than enforcement of the compromise in the guise of imposing alternative relief.

In his objections to **Recommendation No. 7**, Sukumar takes issue with the Special Master's crediting of evidence provided to substantiate certain remedial steps he had demanded in this litigation, such as FitLinxx drilling, are unavailable options at this point in time.  Dkt No. 243, pp. 7-8.  He demands Nautilus be ordered to accomplish certain precision drilling on certain of his machines, even though the provider of the proper specifications for the holes and their placement represents in a letter from FitLinxx's Sr. Mechanical Designer dated February 13, 2008 the company "no longer supports" the particular lines of Nautilus machines at issue because of their age.  R&R Exh. B.  Sukumar insists Nautilus not be permitted to "quibble" with that requirement of the Judgment, even though Defendant substantiates an impossibility of performance without the FitLinxx specifications.  *See* Exh. B to Special Master's R&R.

Other of Sukumar's Objections reflect his propensity to perpetuate interminably the pursuit of his utopian expectations.  For example, he objects to the Special Master's **Recommendation No. 4** that the court reject Sukumar's contention shields are falling off the entire series of Nautilus 2 ST machines.  The Special Master's inspection caused him to conclude the alleged Velcro deficiencies could be easily rectified by cleaning the metal support and applying the proper adhesive, although he does not recommend awarding Sukumar compensation to remedy the defect or to secure the proper adhesive.  The Special Master expressly found after his inspection the shields are sufficiently functional even in their

present condition.  In those instances where he acknowledged such deficiencies and observed "modest corrections would remediate the problems," Sukumar objects he should receive a "financial award" so he can "have that work done by a third party remediator." Dkt No. 243, 8:13-16.  Such an award, however, is not warranted when the machines' functionality is not affected by those particular deficiencies.  The court observes cessation of this litigation over "modest" remediations easily accommodated is long overdue.

Similarly, in his **Recommendation No. 1**, the Special Master reasonably recommends the court reject Sukumar's contention the Skate Machine Nautilus delivered is not new and that Nautilus "fraudulently provided a used Skate Machine."  R&R p. 4.  The court concurs in that recommendation, for the reasons the Special Master expressed in his full-page discussion of the issue (including evidence that the machine was out of production when Sukumar ordered it, he insisted he have one, Nautilus built him one from new parts, and had already replaced one part accidently incorporated that was not brand new).  The court also credits the Special Master's personal observation he found the Skate Machine "to be attractive, clean, in good condition with the alleged defects to be <u>de minimis</u>, truly insignificant, not warranting any further action by Nautilus," and that the "machine conforms to the judgment," rejecting Sukumar's "not new" and fraud assertions.   R&R p. 4.

The court declines to require or to perform any further redundant inspections to satisfy Sukumar's vain hope that eventually someone, at some point, will reach a conclusion that comports with his entrenched and idiosyncratic mind set. Sukumar's many frivolous objections persuade this court he has lost all interest in achieving a resolution of the equipment remediation in some equitable and practicable manner, despite the passage of years and the manifest unavailability of certain remediation options, in favor of a perpetual reiteration of now ancient grievances. It appears to the court Sukumar is bent on achieving a form of moral vindication, which of course is beyond the power or propriety of this court to bestow on him.  Rather than implement what has been found in several instances to be "simple" fixes, he  remains entrenched in attempts to bind the court to perpetual oversight in minute detail of what was and remains essentially a contract dispute, and to bind Nautilus

personnel to maintain the machines in perpetuity, incurring expenses far beyond the value of the remedies previously ordered by the court and many-fold greater than the contract costs for the new machines.

This impression is reinforced by Sukumar's taking issue with the Special Master's emphasis on functionality as a focus of resolving the parties' remaining controversies. He objects the Special Master failed to give sufficient weight to the lengthy report from Sukumar's paint expert, Michael W. Cravens (*see* Patino Decl. Exh. 2) because he recommends rejection of Sukumar's "broad assertion that there is a defective fit and finish with seriously compromised powder coating protection on all delivered equipment." **R&R Rec. No. 5**. Mr. Cravens inspected the Nautilus equipment at issue in September and October 2007. He expressed the opinion the protective value of the applied powder coated finish is "degrading rapidly" due to such *potential* causes as "minimal film build" in select areas, coating over metal scale, weld spatter not removed prior to application of the powder coating material, and "under cured coating," "physical *aging* of the organic finish," and "breaches in the coating *perhaps* caused by material handling, transportation and/or assembly." Cravens Decl. ¶ 4 (emphasis added). Mr. Cravens declared he returned to the warehouse in November 2007, at the request of the Special Master, to obtain more specific information about the type of corrosive defects on a machine-by-machine basis, and stated he found even more deterioration since his inspection just a couple of months before. Cravens Decl. ¶ 7. Sukumar makes no allowance for the effects or contribution to rust spots or other surface deterioration of destructive testing Defendant represents has occurred, or because of simple continued aging of the equipment over the years it has been in Sukumar's physical custody (acknowledged as a possible cause by Sukumar's own expert). The Special Master expressly described and considered Mr. Cravens' expert opinions on the paint and surfaces, including his PowerPoint presentation at a hearing. R&R pp. 8-9. The Special Master also appropriately factored in Nautilus' expert, Greg Webb's, responses to Mr. Craven's criticisms of the machines' conditions, including that some of the bare metal exposure on a machine could well be the result of Sukumar's moving the machine with a

dolly "as Sukumar has had custody of the machines since December 2004," and his confirmation "certain spots with bare metal were the results of testing done by Cravens."[8] R&R p. 9.

Sukumar's insistence that the court accept only his version and representations about the condition of the equipment when delivered compared to now fails to adequately factor in the effects of destructive testing associated with his attempts to make the case the painting was deficient, and other natural processes at work. *See* Cravens Decl. discussed in Pl. Obj. p. 15. The court has reviewed Sukumar's photographic evidence, but also Defendant's supplements to the CD which it represents Sukumar's exhibits to his Objections to the R&R omitted. The court particularly credits the Special Master's personal inspection observations. The court finds much of the deterioration cannot be attributed solely to defects arising from the machine conditions at the time of delivery, and is mindful of the inspections of that equipment memorialized in the record that occurred years ago by neutral observers who also described as minor, frivolous, or unrealistic many of Sukumar's complaints.

The Special Master recommends the court reject Sukumar's claims of operational defects with reference to any machine, with the sole exception of the safety stop on the Hip Extension machine. **R&R Rec. No. 8**. He recommends Nautilus be ordered to correct the safety stop and to pay $500 for remediation of the Hip Extension. **R&R Rec. No. 9**. The court adopts both those recommendations, without objection from Nautilus.

Sukumar represents his evidence "shows without contradiction that the sum necessary for Plaintiff to bring the machines into compliance [with the Judgment] through

---

[8] Except for the recommended $1,000 award for remediation and touch up on two machines the Special Master proposes as his R&R Recommendation No 6, for the reasons he recites at R&R page 9, he concludes: "just as the justice system is not 'perfect' or every trial court error deemed 'prejudicial,' the defects itemized by Cravens are so trifling as to not constitute a failure to comply with the judgment." R&R p. 9. The Special Master expressly found "each machine to be in good working condition with no defects that could reasonably and objectively be considered material, . . . no purported defect impaired the functional use of any machine, . . . [he] was unable to discern any material degradation in any machine, . . . [and he was] satisfied the useful life of each machine will not be reduced by any of the alleged defects identified by Cravens." Id. The Special Master also disagreed with Sukumar's proposed remediation requiring disassembly of each machine "followed by the elaborate process recommended by Cravens with the machine later assembled." Id. He "partially agreed" with Sukumar about two machines, but concluded no more than 10 hours at $100/hour should be adequate for that remediation. Id.

third party professionals totals $430,400" (Pl. Obj. 19:14-16), so he takes issue with the minor monetary compensation linked only to **Recommendation No. 6** (a $1,000 compensatory payment) and to **Recommendation No. 9** (a $500 remediation payment). The court agrees with Defendant's assertion that Sukumar erroneously contends all his evidence in support of each discrete result he wants is "uncontradicted." *See* Def's Resp. To Pl's Objections pp. 8-10.  In particular, the absence of any competing estimates of the cost to achieve what Sukumar believes should be ordered merely reinforces Defendant's position, as found by the Special Master, it had substantially performed under the Judgment before the appointment.  The Special Master made specific findings of fact for reasons and in reliance on evidence also before this court.  The court has considered the record, finds each of those recommendations is amply supported, and adopts each.

Only Sukumar's "resistance to user" issue strikes this court as raising a material defect issue continuing to warrant close scrutiny, as the Special Master also observed. Sukumar has consistently complained of deficiencies in machine calibrations based on those calculations throughout this litigation.  The concern has been acknowledged as material by this court (*see* 7/29/04 Findings of Fact No. 6 (Dkt No. 153)), by the Ninth Circuit (*see* Sukumar, 224 Fed.Appx. at 557 ("improperly calibrated resistence to user" ***would be*** a "material defect[]" under the Judgment)), and now by the Special Master (R&R pp. 5-7). Nautilus acknowledges its responsibility under the Judgment to calculate and label "the machine weights with maximum resistance to user decals. . . ." Dkt No. 153, Finding No. 13. It contends it has done so.  In his **Recommendation No. 3**, the Special Master recommends rejecting Sukumar's contention the machines remain miscalibrated.  The court adopts that recommendation, with one exception discussed below.

Nautilus provided the Special Master with a Declaration tracing its conduct and the events associated with the litigation timeline after the Judgment with respect to the resistance to user issue, substantiating: Nautilus "took all the weight-to-user measurements as required by the judgment and the Court's Finding of Fact and Conclusions of Law;" it "created the specific labels with the weight-to-user measurements;" it "attached the labels

- 13 -

to the machines as required;" and it "timely delivered the machines." Webb Decl. 3:3-6. The Special Master summarized: "In other words, Nautilus says it did exactly what the judgment requires." R&R p. 6. Nautilus explained to the Special Master it had anticipated the issue would continue to arise as Sukumar now presents it, *i.e.* "a dispute over the accuracy of the Glass calculations [by Sukumar's expert] compared to the Nautilus calculations." Id. Nautilus provided technical explanations why and how such calculations might legitimately vary.[9] Id. Although Sukumar's spin on the facts is predictably different, the dispute remains essentially as Nautilus anticipated it would.

The Special Master reasonably approached the dispositive issue as "not . . . what Nautilus may have failed to do in August, 2007, but rather what Sukumar failed to do when Nautilus offered to fund the testing to avoid later disagreement over the results obtained by Nautilus compared to the results obtained by Glass." R&R p. 7. After reviewing "each source cited by Sukumar pertaining to 'Miscalibration of the Resistance to the User' . . . and find[ing] nothing to refute Webb's statement pertaining to his unsuccessful attempt to avoid a potential disagreement over the calculations pertaining to resistence by user," the Special Master concluded with eminent good sense and fairness: "Based on the foregoing, I do not believe that it was the responsibility of Nautilus in this hearing to rebut the accuracy of Dr. Glass's calculations," but rather "in the circumstances outlined above, it was Sukumar's burden to explain why or in what manner Nautilus erred in its calculations." R&R p. 7.

> Simply stating that Glass was well qualified and his calculations are correct, are insufficient reasons for me to ignore the calculations made by Nautilus. In my view, Sukumar could have avoided the present conundrum by responding affirmatively to Nautilus's interest in having a cooperative effort to calculate resistance to user. I therefore find that Nautilus has complied with its responsibility under the judgment with reference to the

---

[9] This appears to be a function of where the measurement is taken: "Generally speaking, the individual could easily influence the result [of weight-to-user measurement] by as much as 30% by simply changing the location, or the angle at which the measurement is taken, or the histerisis (a form of friction) of the machine." Webb Decl. p. 3 ¶ 11.

1                resistance to user calculations and appropriate labeling.[10]

2  Id.

3        The Special Master noted from the historical record of this case Sukumar had rejected

4 Nautilus' proposal at some point of a collaborative and cooperative testing effort Nautilus

5 offered to fund to arrive at an acceptable resistance-to-user calibration or methodology and

6 result.  He also noted Sukumar argued (as Sukumar did again at the hearing before this

7 court) that Nautilus did not attempt to address the resistance to user issue when its

8 representative came to California to remediate the equipment post-Judgment in August

9 2007.  Whether or not Sukumar is satisfied, he does not refute Nautilus' representations it

10 believed it had fulfilled that requirement with calibrations and had taken the machines and

11 affixed decals prior to that visit.  In consideration of the repeated, documented efforts and

12 explanations Nautilus provided associated with its attempts to comply with the Judgment on

13 this issue and to satisfy Sukumar, and why it believes it has done so, and giving due

14 consideration to the Special Master's observations and analytical conclusions, with *de novo*

15 review of the issue and evidence, the court adopts the Special Master's recommendation

16 that plaintiff's objections be overruled, except with respect to one machine.

17        Sukumar referenced the Webb Declaration where defendant's expert acknowledged

18 that a machine referred to at the hearing  as the "regular Cross-Over Machine," was "off" by

19 50% in its adjustment. The parties disagreed at the hearing whether one admittedly

20 misadjusted machine affecting range of motion measurement was corrected on the spot

21 during Nautilus' post-Judgment remediation visit or not.   Based on the proffered evidence,

22 the court **SUSTAINS IN PART** Sukumar's objection to Recommendation No. 3, but only with

23 respect to the adjustment of that particular Cross-Over Machine.  The court finds Nautilus

24 must reinspect that machine and make the necessary adjustment, if it remains

25 unremediated.  The court **REJECTS** all Sukumar's other resistance-to-user objections and,

26

27      [10] Justice Wiener conscientiously expressed, "on a personal level," some discomfort with his conclusion on that issue because (as this court concurs) "resistence to user is an important aspect of this case and of particular significance to those persons whom Sukumar anticipates will be using

28 his equipment for medical rehabilitation."  R&R p. 7.

upon completion of that remediation, **ADOPTS** the Special Master's recommendation Nautilus be deemed to have complied with the adjustment-to-user component of the Judgment in its entirety.[11]

The Special Master expressly and properly declined to express any opinion on Sukumar's request Nautilus be barred from "discriminating" against him with respect to providing parts and services or on any enforcement of warranty claims Sukumar may attempt to advance. *See* R&R p. 13. Sukumar's objections to that portion of the R&R accordingly are wholly unfounded. With respect to **Recommendation No. 10** (*i.e.*, that the court order "future contact between the parties be limited to performing and/or executing the terms" of the Order), the court finds from the record considered by the Special Master as well as in consideration of the entire history of this litigation Defendant accurately characterizes it as a simple "acknowledgment of the many difficulties that arise in attempting to satisfy PLAINTIFF and his counsel's demands." Def's Resp. to Pl's Obj. 10:24-25. Sukumar indignantly construes Recommendation No. 10 as affording unwarranted "incidental relief to *Nautilus*," the non-prevailing party, and argues it is far too sweeping, purportedly impacting, among other things, a different "contract with Nautilus that is the subject of pending litigation in state court." Pl's Obj. to R&R 21:22-23, *citing* Sukumar v. Med-Fit Systems, Inc., No. D051482 (Cal. Ct. App. filed Aug. 17, 2007). Justice Wiener explains:

---

[11] The Special Master had observed the parties' experts (Webb and Glass) "discussed matters collegially," causing him to conclude on "a number of occasions, it appeared there was no disagreement over their findings" on the resistance-to-user issue. R&R p. 7. Justice Wiener observed he believed that if those experts "were to confer in a non-adversarial setting and discuss their respective calculations, they might well devise an inexpensive solution to this problem." R&R p. 7. He also offers to assist the parties in that regard, if the court concludes further efforts should be made to resolve the alleged miscalibration matter. Id. Sukumar objects the resistence to user issue "remains unaddressed, contrary to Special Master Recommendation No. 3" and urges the court to reject the recommended finding the machines have not been miscalibrated. Obj. 12:20-21. He further criticizes the Special Master's recommended result on this issue by contending "the Master acted in breach of the principles enshrined in Federal Rule of Evidence 408 when he shifted the burden of proof and made a decision on the merits based on Plaintiff's supposed failure to mitigate the miscalibration issue by accepting Nautilus' settlement offer," described as a $10,000 offer to settle the entire case. Obj. p. 14. As discussed at the April 21, 2008 hearing, this court disregards discussion of settlement negotiations due, in part, to uncertainty whether Nautilus renewed its offer post-trial to fund a cooperative recalibration using Sukumar's expert. The court is satisfied with the Special Master's assessment, however, that a proper evidentiary focus at this stage in this litigation is directed to Sukumar's conduct with respect to his allegations of miscalibration.

The parties' long relationship speaks for itself.  I recommend the Court's order following submission and review of this report, contain provisions, if possible, terminating the relationship between Sukumar and Nautilus or at least narrowly limiting their on-going relationship.

Special Master's R&R pp. 13-14.

The court rejects Sukumar's attempt to convert that suggestion to consider some relief for a badgered Defendant on the losing end of the Judgment into an allegedly "improper injunction" in excess of the Appointment Order.  The court finds Recommendation No. 10 in fact is exactly the kind of insightful guidance solicited on the issue of ensuring the Judgment in this case is satisfied and the matter achieves final resolution as between parties.   Nevertheless, the court has determined it will not enter such an Order, but clarifies the scope of these proceedings as they may be applied to the parties' interactions.

Generously construing Sukumar's arguments as seeking this court's clarification on the scope of any of its pre-Judgment or post-Judgment Orders in this case affecting these parties, the court observes its Orders in this case apply only to the actual subject matter of this litigation, meaning the particular contracts, equipment, and issues adjudicated in this lawsuit, as circumscribed by the complaint allegations, the operative pleadings, the trial, and the Judgment.[12]  Sukumar overtly signals the possibility he will sue over "warranty disputes that may develop between Plaintiff and Defendants with respect to the subject equipment" that have not been addressed or decided in this litigation.  The court expresses no opinion on that issue, except to observe warranties usually have limited temporal duration and, should any such potential dispute not be foreclosed on that basis, or on grounds of *res judicata* or collateral estoppel, the court will not disturb the final Judgment in this action nor reopen the case on the basis of any warranty dispute.  Breach of warranty was not a cause of action in this case.  Defendants' understanding of the probable basis for Recommendation

---

[12]  The court construes as hyperbolic excess Sukumar's attempt to have the court reject the Special Master's Recommendation No. 10 as an unconstitutional prior restraint on expression in violation of the First Amendment.  Pl's Obj. to Special Master R&R.  Finally, Sukumar's challenge to that recommendation as a due process violation for purportedly attempting to "preemptively decid[e] disputes that have not been previously adjudicated in this case" is similarly rejected.  Pl's Opp. to Special Master R&R 24:1-2.

00cv0304

No. 10, arising from admissions Sukumar made in the course of the Special Master proceedings and in his Motion objecting to the R&R (such as his insistence he has a "right" to force Nautilus to provide him with spare parts and to make "warranty" claims against Nautilus), is entirely consistent with Sukumar's pattern and practice suggesting an intent to continue in perpetuity to make demands on Defendant. *See* Def.'s Resp. p. 11. It is the intention of this court to ensure no such concurrent or future conduct be construed as cognizable within the confines of this litigation or with any continued involvement of this court or its resources or pursuant to any Order or Judgment this court issues associated with this action. *See* Def.'s Resp. pp. 10-12.

With respect to the final allocation of the Special Master costs, Defendant requests all the fees be assessed against Sukumar.[13] Rule 53(g)(3) provides, in pertinent part, the court "must allocate payment among the parties after considering . . . the extent to which any party is more responsible than any other parties for the reference to a master," and an "interim allocation may be amended to reflect a decision on the merits." This court expressly reserved the right to readjust the 50-50 allocation anticipated at the time of the Special Master's appointment. The court finds Sukumar unreasonably complicated the Special Master proceedings by failing to restrict his complaints to only *material* defects, and caused Defendant to incur unnecessary expenses through frivolous demands for remediation and forced justifications. Sukumar's intransigence and unwillingness or inability to differentiate between material and immaterial assertions of defects in the equipment at issue, through multiple proceedings spanning years of involvement by judges and others who have consistently found many of his demands and expectations are in considerable part

---

[13] The Special Master declined Nautilus' invitation he make a recommendation regarding the apportionment of Special Master fees, on grounds the court reserved that determination to itself in the appointment process. R&R p. 14. The Special Master praised both plaintiff and defense counsel for their professionalism, civility, and skill in the proceedings before him. Id. He further noted Sukumar himself and his personnel were all "graciously cooperative," as this court found him to be in his trial appearance. Id. This court also shares the Special Master's view that "Sukumar's goal to use the Nautilus equipment for medical rehabilitation is laudable." Id. This court would add it may well be time for him to implement that goal by accepting this court will entertain no further attempts to obtain any further modification or remediation of that equipment absent instructions from a higher court. Once Nautilus has complied with this Order, the equipment will be wholly and solely the responsibility of Sukumar to put to its intended purpose.

indefensible, (continuing through and including his excessive response to Justice Wiener's R&R), was overwhelmingly responsible for the need to appoint a Special Master at all.  The Ninth Circuit suggested the appointment, and this court adopted the suggestion as a rational and practical means to stop the hemorrhage of judicial resources expended in redundant proceedings the results of which Sukumar refuses to accept.  Under both prongs of the Rule 53(g)(3) payment criteria, the court finds an adjustment from the interim equal split allocation of the costs is warranted.

Among the other relief he sought, Sukumar requested the Special Master recommend he be awarded $430,400 in additional damages.  As Defendant demonstrates, the Special Master recommended additional awards to Sukumar of an infinitesimal fraction of his request.  *See* Def's Resp. p. 12.  Of the ten specific recommendations, the Special Master identifies only three discrete and relatively minor obligations he recommends be found remaining for Nautilus to accomplish, with the preponderance of Sukumar's requests rejected outright as without any merit.  Based on the Special Master's reasoning, the evidentiary record in support of his findings, and the disposition of Sukumar's Objections, the court finds that implementing the R&R Recommendation Nos. 2, 6, and 9, and remediating the one Cross-Over Machine for resistance-to-user/range of motion misadjustment, will bring Defendant into full compliance with the Judgment in this action, discharging all its obligations thereunder.[14]  As discussed above, the court finds Sukumar's tidal wave of Objections to the R&R are nearly all unfounded.  The court has rejected Sukumar's global attack on the R&R and Special Master appointment in an attempt to have the recommendations indiscriminately discarded in their entirety and to obtain yet another full-blown inspection of the minutia of his complaints.[15]  The court has instead attempted to apply to the merits what it believes to be

---

[14]  The court **DENIES** Sukumar's suggestion the court "should modify the Report by adopting Plaintiff's proposed Report and Recommendation in its stead" (Pl's Obj. To Special Master R&R 25:1-2) as self-serving and unsupported by any fair reading of the evidentiary record, the Special Master's thorough execution of his appointment duties, and Defendant's rights.

[15]  For example, Sukumar continued to argue to the Special Master there is a defective fit and finish with seriously compromised powder coating protection on *all* the delivered equipment (*see* rejection Recommendation No. 5), the machines have been miscalibrated (*see* rejection Recommendation No. 3), and operational defects on machines other than the safety stop on the

the proper review standards within the confines of the Special Master's narrow assignment. The court finds Sukumar continues, unreasonably and unjustifiably, to belabor and obstruct the final resolution of this action, despite multiple fair hearings of his allegations and complaints, through and including trial and post-trial review. Accordingly, as this court previously alerted the parties in appointing the Special Master, the court finds responsibility for costs should be reallocated. Applying Rule 53(g)(3) standards, the court finds an appropriate reallocation is 25% to Defendant and 75% to Sukumar.

For all the foregoing reasons, **IT IS HEREBY ORDERED**:

1.    Sukumar's Objections to the appointment of a Special Master are **OVERRULED**.

2.    Sukumar's objections that the Special Master's factual findings are *all* unsupported by the record are **OVERRULED** as manifestly excessive and erroneous.

3.    Sukumar's Motion to have the court reject and declare the R&R a nullity is **DENIED**, and his attempt to coerce this court into a *de novo* revisiting of the minutia of all his dissatisfactions under the guise of Defendant's purported failure to satisfy some portion of the Judgment and through blanket Objections to the R&R is **REJECTED**.

4.    Defendant's Motion to adopt the R&R is **GRANTED**, with the exceptions of a required remediating adjustment to the one Cross-Over Machine discussed at the hearing which modifies R&R Recommendation No. 3 to that extent, and the court's determination not to adopt Recommendation No. 10 as a component of this Order, for the reasons discussed above.

5.    Within thirty (30) days of the date this Order is entered (or some mutually-requested extension of that time granted by the court, should circumstances so require), Nautilus shall implement the R&R Recommendation Nos. 2, 6, 9, and the No. 3 modification as ordered herein.

6.    Within thirty (30) days of the date this Order is entered (or some mutually-requested extension of that time granted by the court, should circumstances so require), the

_____

Smith machine (*see* rejection Recommendation No. 8).

00cv0304

parties shall jointly prepare a [Proposed] Final Judgment disposing of this action in its entirety for the court's signature, incorporating the modifications after remand and in light of the court's decisions arising from the Special Master's R&R, to be lodged through e-filing in the chambers of the undersigned District Judge.

7.     The costs associated with the Special Master proceedings are reallocated as 25% the responsibility of Defendant and 75% the responsibility of Sukumar.  Within seven (7) days from the date this Order is entered, Sukumar shall effectuate reimbursement to Nautilus for that adjustment from the prior allocation of costs.

8.     No motion to reconsider the substantive results terminating this litigation memorialized in this Order will be entertained by the undersigned District Judge, absent an Order from the Ninth Circuit Court of Appeals or upon the presentation of dispositive, controlling legal authority on all fours with the procedural posture and factual circumstances of this case unequivocally dictating a different result.

**IT IS SO ORDERED**.

DATED:  April 23, 2008

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

00cv0304